**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

KYULLE JAY STRONG,
          *Defendant-Appellant.*

No. 06-10566

D.C. No.
CR-05-01183-1-
PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted
February 14, 2007—Berkeley, California

Filed June 11, 2007

Before: Betty B. Fletcher, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

## COUNSEL

Jon M. Sand, Federal Public Defender; Craig Orent (argued), Assistant Federal Public Defender, District of Arizona, Phoenix, Arizona, for the defendant-appellant.

Paul K. Charlton, United States Attorney; John Boyle, Deputy Appellate Chief; Roger Dokken (argued), Assistant United States Attorney, District of Arizona, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

CLIFTON, Circuit Judge:

The district court found Defendant-Appellant Kyulle Jay Strong incompetent to stand trial and committed him to the custody of the Attorney General for treatment and restoration pursuant to 18 U.S.C. § 4241(d). Strong appeals the district court's commitment order, arguing that § 4241(d) is unconstitutional because it requires mandatory confinement without giving the district court an opportunity to assess a defendant's individualized circumstances. We conclude that § 4241(d) comports with the Due Process Clause of the Constitution and affirm the commitment order of the district court.

## I.   BACKGROUND

On November 9, 2005, a grand jury in the District of Arizona indicted Strong and two co-defendants for assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3), and assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(a)(6).[1] Before trial, Strong filed a motion with the district court for determination of his mental competency. After reviewing psychiatric reports submitted by Strong and the government, the district court concluded that Strong was incompetent to stand trial and committed him to the custody of the Attorney General for treatment and restoration pursuant to 18 U.S.C. § 4241(d).[2]

---

[1]Federal jurisdiction is appropriate because the charged offenses occurred within the confines of an Indian Reservation.

[2]18 U.S.C. § 4241(d) provides, in pertinent part:

   If, after [a competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the cus-

Strong argued before the district court that commitment under § 4241(d) violated his due process rights, because the statutory provision required mandatory commitment and did not give the district court an opportunity to assess Strong's individualized circumstances, such as whether Strong is, in fact, restorable to competency, and whether inpatient treatment is the least restrictive means to restore him. The district court rejected Strong's argument and held § 4241(d) to be constitutional. Accordingly, it ordered Strong transferred to a federal medical facility in Butner, North Carolina, under the terms of that statutory provision. Strong timely appealed the district court's commitment order, renewing his argument that § 4241(d) is unconstitutional.

While awaiting transfer, the district court permitted Strong to remain at Recovery Homes, a local inpatient facility where Strong had been residing while receiving drug and alcohol treatment. When Strong was initially granted pre-trial release, the district court warned him and defense counsel that Strong's release to Recovery Homes would be contingent upon Strong's strict adherence to his pre-trial release condi-

---

tody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

tions. Specifically, the district court emphasized to defense counsel:

> Mr. Strong will have to sign the release order, but I want him to do that only, only after you have reviewed it thoroughly with him, reviewed the nature of the charges against him, and made sure in your own mind . . . that he is fully aware of the consequences of his violation of the slightest degree of anything in this release order.

Because Strong undisputedly had an alcohol and substance abuse problem, one of the conditions of his pre-trial release was that he refrain from the consumption of alcohol.

Before this court heard Strong's appeal of the § 4241(d) commitment order, Strong violated a condition of his pre-trial release by consuming a beer. Consequently, he was terminated from the treatment program at Recovery Homes and brought before the district court for pre-trial release revocation proceedings. At the revocation hearing, the district court concluded that Strong's violation of the pre-trial release condition "represent[ed] the wors[t] type of conduct that the Court can imagine taking into consideration the nature of the charges." It therefore ordered Strong detained as a danger to the community pursuant to 18 U.S.C. § 3142.[3] Before the district court issued the detention order, defense counsel urged the district court not to consider its prior commitment order in deciding whether or not to detain Strong. Although it is not entirely clear from the record, it does not appear that the district court heeded defense counsel's request. As will be discussed in more detail below, when asked specifically by defense counsel whether its decision to detain Strong was influenced by Strong's impending commitment under § 4241(d), the district court answered in the affirmative.

_____

[3]18 U.S.C. § 3142 sets forth the criteria for determining whether a criminal defendant should be detained or released pending trial.

Strong timely appealed the § 3142 detention order, which this court affirmed. *United States v. Strong*, No. 06-10609 (9th Cir. Dec. 11, 2006) (unpublished order) (Goodwin, McKeown, Fisher, JJ.). In light of the detention order, the government filed a motion to dismiss Strong's § 4241(d) appeal on mootness grounds. On December 18, 2006, this court denied the government's motion without prejudice "to renewing the arguments in the answering brief." *United States v. Strong*, No. 06-10566 (9th Cir. Dec. 18, 2006) (unpublished order) (McKeown, Fisher, JJ.). The government renewed its mootness argument in the present appeal.

The issue before us is the validity of the district court's September 13, 2006 commitment order. We have jurisdiction under the "collateral order" doctrine. *See United States v. Friedman*, 366 F.3d 975, 978-80 (9th Cir. 2004). We conclude that the matter is not moot and affirm the district court's order on the merits.

## II. MOOTNESS

Mootness is a jurisdictional issue which we address at the threshold. *See Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). The "inexorable command" of the Constitution confines us to deciding only "actual cases and controversies." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005) (citing U.S. CONST. art. III, § 2, cl. 1). For a case to fall within our limited judicial power, "it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we are reviewing." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Rather, a live case or controversy must be "extant at all stages of review." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Otherwise, the case is moot and must be dismissed. *See Paulson v. City of San Diego*, 475 F.3d 1047, 1048 (9th Cir. 2007).

[1] An appeal is moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief

whatever in favor of the appellant." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) (internal quotation marks omitted). The party asserting mootness bears a "heavy burden of establishing that there is no effective relief remaining for a court to provide." *GATX/Airlog Co. v. United States Dist. Court*, 192 F.3d 1304, 1306 (9th Cir. 1999). Here, the government argues that Strong's appeal is moot because the district court's subsequent detention order foreclosed Strong's ability to seek less restrictive means of treatment or restoration under 18 U.S.C. § 4241(d). According to the government, "even if there were some merits initially to [Strong's] argument that the district court should have considered non-custodial alternatives to the temporary hospitalization commitment and study required by 18 U.S.C. § 4241(d), this is not an effective remedy or alternative for an in-custody defendant."

We agree with the government's argument in principle, but disagree that the argument should be applied in the specific context of this case. The government has failed to carry its "heavy burden" of persuading us that, even in the absence of the § 4241(d) commitment order, the district court would nevertheless have adjudged Strong to be a danger to the community and detained him pursuant to § 3142. *See GATX/Airlog Co.*, 192 F.3d at 1306. While the record below is somewhat ambiguous, it indicates that the district court relied on the terms of the commitment order in deciding to take Strong into custody, perhaps because it believed that § 4241(d) required confinement in any event. When asked by defense counsel whether its decision to detain Strong was influenced by Strong's impending commitment under § 4241(d), the district court responded:

> Well, yes, the Court did take into consideration the commitment. And it, in the Court's mind, justifies the precise language of the statute that requires a mandatory commitment to the custody of the attorney general for the obvious reason that you can't

have people who are found by the court to be incompetent and have them loose in the society.

**[2]** If the district court had answered defense counsel's question with a "no," then we could conclude that the commitment order before us now had been overtaken by subsequent events, rendering this appeal moot. But that was not the answer the district court gave when asked the critical question. Instead, the court said that its decision to detain Strong was based, at least in part, on Strong's impending commitment under § 4241(d). Accordingly, we cannot say with certainty that the district court might not issue a different order if we were to remand the matter after holding the mandatory confinement provision of § 4241(d) to be unconstitutional.

**[3]** In prior cases, we have held that where the district court has the statutory discretion to modify a defendant's term of supervised release following a successful sentencing challenge, the possibility that the district court may exercise such discretion following this court's decision is sufficient to prevent an appeal from becoming moot. *See Mujahid v. Daniels*, 413 F.3d 991, 994-95 (9th Cir. 2005) ("The 'possibility' that the sentencing court would use its discretion to reduce a term of supervised release . . . was enough to prevent the petition from being moot.") (internal citation omitted). Here, the district court under § 3142 could reopen the hearing on Strong's detention order "at any time before trial" if new information is discovered that has "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(f). The district court's ability to exercise its discretion to reopen the detention hearing following our decision in this appeal is sufficient to defeat the government's mootness argument. Accordingly, we conclude that Strong's appeal of the § 4241(d) commitment order is not moot.

## III.   THE COMMITMENT ORDER

Strong argues that 18 U.S.C. § 4241(d) violates his liberty interest under the Due Process Clause to be free from government confinement, because the statutory provision "mandates institutionalization of all incompetent criminal defendants for restoration without any consideration of the efficacy of such a commitment or the availability of less restrictive alternatives."[4] *See Reno v. Flores*, 507 U.S. 292, 346 (1993) ("[T]he right to be free from Government confinement . . . is the very essence of the liberty protected by the Due Process Clause."); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). We review *de novo* challenges to the constitutionality of a statute. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999).

**[4]** Whether mandatory commitment under § 4241(d) violates a defendant's fundamental liberty interest under the Due Process Clause is an issue of first impression for this court. We look, first and foremost, to the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715 (1972), and then to the decisional law of other courts for guidance. Ultimately, we conclude that § 4241(d) is consistent with defendants' due process rights and affirm the district court's commitment order.

**[5]** In *Jackson*, the Supreme Court reviewed the constitutionality of an Indiana statutory scheme that provided for the commitment of criminal defendants adjudged to be incompetent to stand trial. *See* 406 U.S. at 717-18. In holding the pro-

---

[4]In a footnote to his opening brief, and without citation to the relevant authority, Strong also argues that § 4241(d) violates the Equal Protection Clause, as well as 29 U.S.C. § 794. "The summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal." *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996). Pursuant to *Hilao*, we deem Strong's equal protection and § 794 arguments to be waived.

vision unconstitutional on due process grounds, the Supreme Court focused on two factors. First, the Court strongly suggested that the indefinite term of the commitment authorized under the statute was a key element driving the Court's decision to invalidate the statute: "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held *more than the reasonable period of time necessary* to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738 (emphasis added); *see also id.* at 733 ("Without a finding of dangerousness, [a defendant who is deemed incompetent to stand trial] can be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future."); *id.* at 725 ("Were the State's factual premise that [defendant's] commitment is only temporary a valid one, this might well be a different case.").

**[6]** Second, the Court concluded that the indefinite term of the commitment prescribed under the statute did not bear a "reasonable relation" to the purported purpose for which the commitment was designed — specifically, the purpose of determining whether a defendant was restorable to competency. *See id.* at 738. The Court noted that the challenged statute did not require the state to provide the committed defendant with any "formal commitment proceedings addressed to [his] ability to function in society, or to society's interest in his restraint, or to the State's ability to aid him in attaining competency through custodial care or compulsory treatment." *Id.* (alteration in original) (internal citation and quotation marks omitted). Thus, the Court invalidated the indefinite commitment procedure under the Indiana statute as a violation of defendants' due process rights. *See id.* at 720, 731-39.

Our examination of § 4241(d) convinces us that the statute before us is fundamentally different from the statutory scheme

invalidated in *Jackson*. In fact, it is significant to note that § 4241(d) was enacted in response to the *Jackson* decision and echoed *Jackson*'s language. *See*, *e.g.*, *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990) (§ 4241(d) "was passed in response to the Supreme Court decision in *Jackson*."); *United States v. Shawar*, 865 F.2d 856, 864 (7th Cir. 1989) ("Congress clearly was aware of the Court's decision in *Jackson*, and echoed its language in § 4241(d)."); *United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000) ("[§ 4241(d)] is self-evidently built upon *Jackson*."). We hold that § 4241(d) comports with *Jackson*'s constitutional mandate. We base this conclusion on our analysis of the two factors articulated by the *Jackson* Court: (1) the duration of the defendant's commitment, and (2) the closeness of the fit between the commitment and the purpose for which such commitment is designed.

**[7]** Unlike the statute at issue in *Jackson*, the duration of the commitment authorized under § 4241(d) is inherently limited. The relevant portion of the statute provides that, upon a finding of incompetency:

> [T]he Court shall commit the defendant to the custody of the Attorney General . . . [who] shall hospitalize the defendant for treatment in a suitable facility . . . *for such a reasonable period of time, not to exceed four months*, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

18 U.S.C. § 4241(d) (emphasis added). By its own terms, § 4241(d) caps a criminal defendant's initial commitment for incompetency to a period of no more than four months. *Id.* § 4241(d)(1). The statute also provides a flexible mechanism through which the defendant could gain early release — namely, through regaining competency prior to the conclusion of the four-month period, or through an appropriate medical

determination that there is no "substantial probability" that the defendant could be restored to competency in the "foreseeable future." *Id.* Strong's counsel readily acknowledged the flexible nature of § 4241(d) during district court proceedings, noting at one point: "[O]nce [Strong] gets to Butner . . . *the staff there might say within a week that he's competent or that he's not restorable*. That's unlikely, but in theory, and he would be returned to us. And we would be on the trial track again." (emphasis added).

**[8]** Also contrary to the statutory scheme invalidated in *Jackson*, commitment under § 4241(d) bears a "reasonable relation" to the purpose for which it is designed: determining whether a criminal defendant is susceptible to timely restoration. *See* 18 U.S.C. § 4241(d)(1). Strong disagrees, arguing that no such reasonable relationship exists because § 4241(d) provides for the commitment of restorable and non-restorable defendants alike. We reject Strong's argument as being grounded on a faulty premise.

As a number of other circuit courts have noted, the overarching purpose of commitment under § 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency. Such a determination requires a more "careful and accurate diagnosis" than the "brief interviews" and "review of medical records" that tend to characterize the initial competency proceeding. *See United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003); *Filippi*, 211 F.3d at 651. In this respect, we find the Eighth Circuit's observation in *Ferro* and the First Circuit's observation in *Filippi* to be particularly instructive. According to the Eighth Circuit, "the miracles of science suggest that few conditions are truly without the possibility of improvement. Therefore, even where the medical reports presented to the district court showed . . . that [defendant's] condition was permanent, [§ 4241(d)] appropriately affords additional time during which the Attorney General may explore medical options." *Ferro*, 321 F.3d at 762. In the same

vein, the First Circuit noted in *Filippi* that even where the available evidence indicates that a criminal defendant's mental condition is irreversible, Congress "could reasonably think that, in almost all cases, temporary incarceration would permit a more careful and accurate diagnosis before the court is faced with the serious decision whether to defer trial indefinitely and (quite often) to release the defendant back into society." *Filippi*, 211 F.3d at 651. Because Strong's argument presumes an answer to the precise question to be determined through § 4241(d) commitment — namely, the question of whether a defendant is, in fact, restorable to mental competency — we are not persuaded by his argument.

Strong also argues that the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003), supports his due process challenge, arguing that the "clear import" of that decision is that "a statute mandating detention of an entire category of citizens," as opposed to aliens, is unconstitutional. In that case, the Supreme Court upheld a statute that mandated the detention of all deportable aliens convicted of aggravated felonies pending their removal proceedings. *See id.* at 517-18. The decision actually supports our conclusion that § 4241(d) is constitutional. In *Demore*, the Court distinguished the statute at issue from a statute it had invalidated in a prior case, noting that the statute in *Demore* was constitutionally sound because: (1) it provided for detention of a limited duration, and (2) the detention "b[ore] a reasonable relation to the purpose for which the individual was committed." *See id.* at 527-29 (distinguishing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Commitment under § 4241(d) is both limited in duration and reasonably related to the purpose for which the defendant is confined. It is, therefore, in accord with the constitutional framework set forth in *Demore*.

## IV. CONCLUSION

**[9]** Three other circuits have considered the issue of whether § 4241(d) is consistent with the Due Process Clause

and have uniformly answered this question in the affirmative. *See Filippi*, 211 F.3d at 651-52; *Donofrio*, 896 F.2d at 1303; *Shawar*, 865 F.2d at 864. We join them and affirm the order of the district court committing Strong to the custody of the Attorney General under the terms of that statutory provision.

**AFFIRMED.**