**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 22 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSE ALFREDO CHAVIRA MENDOZA, <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 23-603 <br><br> Agency No. <br> A200-878-074 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 20, 2025[**]
Seattle, Washington

Before: McKEOWN, PAEZ, and DESAI, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Jose Alfredo Chavira Mendoza ("Chavira Mendoza") petitions for review of

the decision of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's ("IJ") denial of his applications for cancellation of removal,

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

We review questions of law de novo, *Flores-Rodriguez v. Garland*, 8 F.4th 1108, 1113 (9th Cir. 2021), and the merits of a hardship determination for cancellation of removal for substantial evidence, *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025). When, as here, the BIA adopts the IJ's decision under *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), but also "provide[s] its own review of the evidence and the law, we review both the IJ and BIA's decision." *Joseph v. Holder*, 600 F.3d 1235, 1240 (9th Cir. 2010). We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). We deny the petition in part and dismiss the petition in part.

1.      The agency did not err by denying Chavira Mendoza's application for cancellation of removal. First, the agency did not apply the wrong standard by "focus[ing] on the [p]etitioner rather than his qualifying relatives." Chavira Mendoza's job skills and financial assets are relevant "to the extent that they affect the potential level of hardship to [his] qualifying relatives." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 471 (BIA 2002). Next, the agency did not fail to address the cumulative harm to both of Chavira Mendoza's qualifying relatives because it analyzed the harm to each relative and harm "in the aggregate." *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024) (citing *Wilkinson v. Garland*, 601 U.S. 209, 215

(2024)).

Last, Chavira Mendoza argues that the agency failed to "evaluate based on the record" whether his relatives would experience "exceptional and extremely unusual hardship" if he were removed from the United States. But the IJ recounted his testimony at length and "discussed all evidence that was highly probative or potentially dispositive."[1] *Gonzalez-Juarez*, 137 F.4th at 1008. And the agency's conclusion that Chavira Mendoza failed to satisfy the hardship standard is supported by substantial evidence because the record does not "compel the conclusion" that his relatives would suffer an "out of the ordinary and exceedingly uncommon" hardship if he were removed. *Id.* at 1006.

2.      Chavira Mendoza forfeited his challenge to the agency's determination that he abandoned his asylum application. Although he identified the issue in the "issues presented" section of his brief, he provided no argument that the IJ and BIA

---

[1]      Chavira Mendoza did not specifically argue that the agency erred by failing to consider a letter submitted by his mother or give reasoned consideration to the citizenship status or proximity of his siblings to his mother. But in any event, the agency did not err on either ground. First, the IJ's failure to mention the letter from Chavira Mendoza's mother itself is not legal error. The letter is neither "highly probative" nor "potentially dispositive," *Gonzalez-Juarez*, 137 F.4th at 1008, because it is duplicative of Chavira Mendoza's testimony, which the IJ considered and recounted at length in his decision. And second, the agency provided sufficient consideration to Chavira Mendoza's siblings' citizenship status and proximity to their mother. The IJ acknowledged each sibling's status and residence, but concluded that Chavira Mendoza failed to present sufficient evidence that his siblings would fail to provide support for their mother. The record supports this conclusion.

erred by finding his asylum claim abandoned, which does not sufficiently raise the challenge for this court's review. *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1260 (9th Cir. 1996) (holding that a petitioner forfeited an issue by including it in the "Statement of the Case" but failing to address it elsewhere in the brief).

3.    The IJ did not violate Chavira Mendoza's due process rights by failing to edit and sign his oral decision. To succeed on a due process claim, a petitioner must show "prejudice, 'which means that the outcome of the proceeding may have been affected by the alleged violation.'" *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006) (quoting *Platero-Cortez v. I.N.S.*, 804 F.2d 1127, 1132 (9th Cir. 1986)). Even assuming that the failure to serve Chavira Mendoza with a signed and edited oral decision was a technical error, he fails to identify any potential prejudice from the alleged error, and thus his due process claim fails. *See Tamayo-Tamayo v. Holder*, 725 F.3d 950, 954 (9th Cir. 2013) ("To show prejudice, a petitioner must present plausible scenarios in which the outcome of the proceedings would have been different if a more elaborate process were provided." (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007)) (citation modified)).

4.    Chavira Mendoza's challenge to the denial of his motion to continue in order to pursue his U-visa application is moot. The government provided documents showing that while the instant petition for review was pending, Chavira Mendoza's

U-visa application was denied. Because the underlying relief sought was denied, we can no longer "grant any effectual relief," and the claim is moot. *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007). We thus dismiss the petition as to the motion to continue.

**Petition DENIED in part and DISMISSED in part.**

*Chavira Mendoza v. Bondi,* No. 23-603

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's denial of Chavira Mendoza's petition for review of his asylum and due process claims, and the majority's dismissal of Chavira Mendoza's challenge to the Immigration Judge's ("IJ") denial of his motion to continue as moot. But I respectfully dissent from the majority's holding that the agency did not err in denying Chavira Mendoza's application for cancellation of removal. In my view, the IJ failed to give "reasoned consideration" or "discuss[] all evidence that was highly probative or potentially dispositive" to the determination of whether Chavira Mendoza's removal would result in "exceptional and extremely unusual hardship" to his 68-year-old lawful permanent resident mother, Moncerrat Esperanza Mendoza ("Moncerrat"). *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1008 (9th Cir. 2025); 8 U.S.C. § 1229b(b)(1)(D). I would therefore grant the petition for review in part and remand.

The agency's failure to even "discuss[]" Moncerrat's letter to the court regarding the hardship her son's removal would cause her and its failure to give "reasoned consideration" to the distance and legal status of Chavira Mendoza's siblings was legal error. *Gonzalez-Juarez*, 137 F.4th at 1008; *Cole*, 659 F.3d at 772. This evidence is "highly probative" to whether Moncerrat "would suffer hardship

1

that is substantially different from, or beyond, that which would normally be expected" to result from a deportation, as it speaks directly to whether Chavira Mendoza's "elderly parent[]" is "solely dependent upon him for support." *In Re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63, 65 (B.I.A. 2001).

The IJ failed to discuss Moncerrat's letter "shar[ing] the importance of having my son living with me." In the letter, Moncerrat wrote that she has "los[t] most of my independence" as a result of her chronic obstructive pulmonary disease ("COPD"), and that Chavira Mendoza is her "only means of support." In addition to "pay[ing] all of our household bills," Chavira Mendoza "purchases our groceries and takes us to medical appointments." Moncerrat described her son's assistance as necessary to her sustenance and wellbeing, writing: "I would not be able to survive without his assistance."

The majority dismisses this letter as "duplicative" of Chavira Mendoza's testimony. I disagree. First, the letter is the only evidence directly from Moncerrat regarding the hardship her son's removal would cause her. Despite Moncerrat's difficulty breathing, she flew to Seattle for the hearing, but did not testify, in part because there was no interpreter available. The letter was thus the sole evidence that conveyed in Moncerrat's own words the hardship her son's removal would cause her. While Chavira Mendoza described how he supports his mother, his testimony did not supplant Moncerrat's subjective, lived perspective regarding the hardship she

2

would experience from her son's removal. The letter was not cumulative; in my view, it both provided the IJ "information [he] learned from no other source," and "strengthen[ed] . . . what other evidence shows (esp. that which needs support)." *United States v. Cruz-Garcia*, 344 F.3d 951, 957 (9th Cir. 2003); *Yun Hseng Liao v. Junious*, 817 F.3d 678, 695 (9th Cir. 2016) (citing Black's Law Dictionary (10th ed. 2014)) (distinguishing cumulative evidence from corroborative evidence).

Congress enacted Section 1229b(b)(1)(D) to prevent U.S. citizens and lawful permanent residents from experiencing particularly serious consequences due to a close relative's deportation. *See In Re Monreal-Aguinaga*, 23 I. & N. Dec. at 63 ("*[O]nly* hardship to qualifying relatives, and not to the applicant, may be considered"). But the majority finds no error by the IJ in disregarding the perspective of the very persons the statute was enacted to protect.

Second, the letter speaks more directly to hardship than any other record evidence. Chavira Mendoza testified that he believed his mother's condition was progressing and he did not believe she could live alone. But Moncerrat's letter was far grimmer, questioning her ability to "survive" if her son were deported—a quintessentially "out of the ordinary and exceedingly uncommon" hardship. *Gonzalez-Juarez*, 137 F.4th at 1006.

Third, the IJ did not engage with the possibility that Chavira Mendoza's removal would result in Moncerrat's deprivation of critical in-person support. The

3

IJ's finding that Chavira Mendoza's siblings could "provide financial support to their mother" does not suggest her siblings would—or could—bring her groceries, drive her to doctors' appointments to manage her progressive COPD, do yard work, or help her with chores and cleaning. Nor is there record evidence suggesting the siblings could send enough money to pay all of Moncerrat's bills *and* hire a caregiver. Indeed, the IJ's conclusion that Moncerrat would have adequate support was based on the absence of evidence that the siblings would not support their mother. This conclusion was, to borrow the IJ's words, "pure speculation" unsupported by the record, which instead detailed the siblings' refusal to answer when asked whether they would provide any financial support to their mother.

The IJ and BIA also failed to provide "reasoned consideration" to record evidence suggesting that Chavira Mendoza's siblings would be unable to provide the day-to-day support Moncerrat needs due to her progressive COPD.[1] Two of Chavira Mendoza's siblings live too far from their mother to be able to provide routine in-person support. One lives approximately 800 miles away from their mother; the other lives approximately 200 miles away. The IJ's conclusion that Chavira Mendoza's siblings would be able to provide the "family support" Moncerrat relies

---

[1] The IJ's "dismissive, fleeting reference" to the siblings' residence and legal status is "insufficient and falls far short of the agency's obligation to give 'reasoned consideration' to the evidence." *Udo v. Garland*, 32 F.4th 1198, 1205 (9th Cir. 2022).

upon would require the assumption that these siblings could move to take over in-person care. But there is no evidence in the record suggesting they would be willing or able to do so. This leaves Chavira Mendoza's only sibling that resides near Moncerrat. But this sibling lacks legal status, a relevant (and potentially "significant") consideration in the agency's hardship determination. *See In Re Gonzalez Recinas*, 23 I. & N. Dec. 467, 472 (B.I.A. 2002). We cannot assume that this sibling will be available to care for Moncerrat, as she is more likely "to be subject to immigration enforcement." *Id.*

In sum, Moncerrat has one child that lives near her who may be deported any day, and two other children hundreds of miles away, with no indication in the record that they are able to move closer to their mother. In other words, it is likely that once Chavira Mendoza is removed, Moncerrat will be alone. The IJ erred in failing to provide "reasoned consideration" to evidence suggesting such an outcome.

As the BIA has explained, "the hardship standard is not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief." *In Re Gonzalez Recinas*, 23 I. & N. Dec. at 470. The evidence overlooked by the agency in this case could have changed the outcome.

For the above reasons, I would grant the petition in part and remand for the agency to reconsider whether Chavira Mendoza's removal would result in a qualifying hardship to his mother.